IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

K.K. *a minor by her parents*, L.K. *and*, T.G.
*and on their own behalf,*

                                                                         12cv1603

            Plaintiffs,                  **ELECTRONICALLY FILED**

            v.

PITTSBURGH CITY SCHOOLS,

            Defendant.

## MEMORANDUM RE: DEFENDANT'S MOTION TO DISMISS (DOC. NO. 20)

*I.*     *Introduction*

This case centers on alleged disability-based discrimination by the Pittsburgh City Schools against a former student ("K.K"). The case is brought by K.K. and her parents, L.K and T.G. on her behalf and on their own behalf. Doc. No. 1. Presently before this Court is Defendant, Pittsburgh City School's, Motion to Dismiss Parents' Claims. Doc. No. 20. Defendant seeks dismissal of the parents' claims for lack of standing. Id. After careful consideration of Defendant's Motion to Dismiss (Doc. No. 20), brief in support thereof (Doc. No. 21), Plaintiff's response in opposition (Doc. Nos. 24 and 25), Defendant's Motion to Dismiss (Doc. No. 20) will be GRANTED.

*II.*     *Statement of Facts*

When reviewing a Motion to Dismiss under Federal Rules of Civil Procedure 12(b)(6), the Court accepts all factual allegations in the Complaint as true and draws all reasonable inferences in favor of the Plaintiff. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 2010 (3d.

Cir. 2009). Taking the Plaintiff's factual allegations to be true for the purposes of this Memorandum Opinion, the facts of this case are as follows:

Plaintiff, K.K., attended the Center for Advanced Studies at [Taylor] Allderdice High School where she participated in extra-curricular activities and carried a heavy academic course load. Doc. No. 1, ¶¶ 13,14.  Plaintiffs, L.K. and T.G., are K.K.'s parents and legal guardians. Id. at ¶ 6.

In February 2009, K.K.'s junior year, K.K. became ill and subsequently developed gastroparesis. Id. at ¶ 16. Because of her medical condition, K.K. was unable to attend school. Id. at ¶ 18. Instead, she received homebound instruction 2.5 hours per week from an instructor who was not qualified to instruct all of her courses. Id. K.K. was unable to finish two of her classes and was forced to complete both during her senior year. Id. at ¶ 19.

In September 2009, K.K. returned to school for her senior year; however, she suffered a relapse in October and began homebound instruction again in late October. Id. at ¶ 20. T.G. requested that the District, under a Section 504 plan, provide K.K. with: (1) more than 2.5 weekly hours of instruction; (2) qualified instruction for all academic courses; and (3) a single point of contact for coordinating K.K.'s program. Id. at ¶ 21.

The District adopted a Section 504 Service Agreement on November 10, 2009, which provided K.K. with 2.5 hours of weekly instruction by an instructor who "would not be qualified in all academic areas." Id. at ¶ 22. The District did not establish a point of contact for coordinating K.K.'s program. Id. K.K.'s first instructor quit because the instructor was unable to provide her with the instruction she needed. Id. at ¶ 24. The District recommended that K.K. drop certain classes and complete only the classes required to graduate; K.K. dropped two classes. Id. at ¶ 25. The second instructor acknowledged that K.K. needed more instruction than

what he could provide. Id. at ¶ 25. The academic counselor, assigned by the District to monitor K.K.'s program, did not take action when K.K. was struggling with homebound instruction and acknowledged that she felt no responsibility for K.K.'s needs under the Section 504 Service Agreement. Id. at ¶¶ 27-29.

In December 2009, the school psychologist (diagnosis: "Adjustment Disorder With Mixed Anxiety and Depressed Mood, Chronic"), a psychologist at Children's Hospital, and K.K.'s treating physicians determined that K.K. suffered from anxiety associated with school work. Id. at ¶¶ 30, 31. The District was aware of the anxiety diagnosis. Id. at ¶ 31.

On January 13, 2010, the District created a second Section 504 Service Agreement, which provided several accommodations, including direct instruction in each class from a qualified instructor and correspondence with K.K.'s parents about her progress. Id. at ¶ 32. The program was designed to coordinate make up assignments so that K.K. could "catch up." Id. at ¶ 43. The academic counselor was in charge of administering the second 504 Service Agreement, but denied responsibility. Id. at ¶ 37.

K.K. returned to school in February. Id. at ¶ 39. K.K. was unable to complete course work assigned during the first semester. Id. While the purpose of the second Section 504 Service Agreement was for K.K. to receive direct instruction to "catch up," K.K. received minimal instruction that taught her the "material for the first time." Id. at ¶¶ 40-44. K.K. could not understand the material taught in class. Id. at ¶ 44.

K.K. began skipping classes by hiding in the library, and began taking anti-depressants. Id. at ¶¶ 46, 47. In a meeting on April 21, 2010, with her teachers, parents, interim principal, and academic counselor, K.K. expressed her struggles in class and her emotional state. Id. at ¶¶ 47-49. At the meeting, the interim principal emphasized the importance of monitoring K.K.'s

progress. Id. at ¶ 48. Approximately three weeks after the meeting, T.G. encountered the academic counselor by happenstance, and T.G. was casually informed that K.K. had not attended class since the meeting. Id. at ¶ 50. K.K. had continued to skip class and hide in the library. Id. at ¶ 51. The academic counselor denied that she was responsible for monitoring K.K.'s attendance. Id. at ¶ 53.

K.K. returned to homebound instruction. Id. at ¶ 54. T.G. took a leave of absence from work to help K.K. complete her assignments. Id. ¶ 55. K.K. did not graduate with her class, but finished her work on June 25, 2010. Id. K.K. continued to experience anxiety and panic attacks in college. Id. at ¶ 56. Due to her anxiety, K.K. finished her first year on academic probation and withdrew on medical leave during her second year. Id. at ¶ 56.

### III.    Standard of Review

A Motion to Dismiss pursuant to Fed. R. Civ. P. 12(b)(1) challenges this Court's "very power to hear the case." See *Judkins v. HT Window Fashions Corp.*, 514 F. Supp. 2d 753, 759 (W.D. Pa. 2007) (Lancaster, J.) (quoting *Mortenson v. First Fed. Sav. & Loan Ass'n*, 549 F.2d 884, 891 (3d Cir. 1977)). As the party asserting jurisdiction, Plaintiff "bears the burden of showing that its claims are properly before the district court." *Dev. Fin. Corp. v. Alpha Housing & Health Care*, 54 F.3d 156, 158 (3d Cir. 1995). In reviewing a Motion to Dismiss pursuant to Rule 12(b)(1), this Court must distinguish between facial attacks and factual attacks. See *Petruska v. Gannon Univ.*, 462 F.3d 294, 302 (3d Cir. 2006).

A dismissal for lack of standing is effectively the same as a dismissal for failure to state a claim. *Baldwin v. Univ. of Pittsburgh Med. Ctr.*, 636 F.3d 69, 73 (3d Cir. 2011). In evaluating whether a plaintiff had adequately pled the elements of standing, Courts apply the same standard for reviewing a complaint pursuant to Federal Rules of Civil Procedure 12(b)(6). Id. at 73, 74.

Therefore, the Court must accept as true all material allegations set forth in the complaint, and construe the allegations in favor of the non-moving party. *Warth v. Seldin*, 422 U.S. 490, 501 (1975); *See In re Schering Plough Corp. Intron/Temodar Consumer Class Action*, 678 F.3d 235 (3d Cir. 2012).

  *IV.* *Discussion*

  Plaintiffs' Complaint contains the following causes of action: (1) procedural violations of Section 504 of the Rehabilitation Act of 1973 and (2) substantive violations of Section 504 of the Rehabilitation Act.  Doc. No. 1.

  In support of its Motion to Dismiss, Defendant contends that: (1) claims made by K.K.'s parents on her behalf must be dismissed for lack of standing and (2) claims made by K.K.'s parents on their own behalf must be dismissed for lack of standing.  Doc. No. 21.

  *A.  Claims by K.K.'s Parents on her Behalf*

  As noted by both parties, Federal Rule of Civil Procedure 17(a) provides that "[a]n action must be prosecuted in the name of the real party in interest."  In Pennsylvania, an individual who is over 18 years old can sue and be subject to suit.  20 Pa. C.S. § 102.  Apart from the generalized claims that the actions at issue occurred when K.K. was a junior and senior in high school, there are no specific factual averments in the Complaint as to K.K.'s age at the time of the actions at issue or her current age.  However, in their respective briefs, it appears that all parties agree that K.K. was over 18 years of age when Plaintiffs filed their Complaint.  Doc. No. 21, 2 and Doc. No. 23.

  The Court finds that any claims that K.K. has against Defendant should be brought by her exclusively and not by her and her parents on her behalf because she was over 18 years old when the Complaint was filed.  In this case, K.K. is the "real party in interest" and no injustice will

result (*i.e.* there is no need to protect Defendant from subsequent actions) if K.K.'s parents are not included as Plaintiffs "on her behalf." Therefore, Defendant's Motion to Dismiss will be granted in this respect.

The Court will now turn to K.K.'s parents' claims brought on their own behalf.

### B.  Independent Claims by K.K.'s Parents

Defendant also contends that claims brought by K.K.'s parents on their own behalf must be dismissed for lack of standing. Plaintiffs' claims are brought pursuant to Section 504 of the Rehabilitation Act of 1973, a civil rights statute that prohibits discrimination against individuals with disabilities in programs and activities, including schools, that receive federal financial assistance. 29 U.S.C. § 794.

Section 504 provides that "[t]he remedies, procedures, and rights set forth in title VI of the Civil Rights Act of 1964 shall be available to any person aggrieved by any recipient of Federal assistance or Federal provider of such assistance . . . ." 29 U.S.C. § 794(a). The United States Court of Appeals for the Third Circuit has not directly addressed whether parents may bring independent claims under Section 504.

Although K.K.'s parents contend that they incurred expenses during the implementation of K.K.'s Section 504 program, the Court finds that K.K. is the only appropriate "aggrieved party" that has proper standing under Section 504 in this case. Defendant's alleged actions led to K.K. being "unable to finish coursework," feeling "complete and total panic," skipping classes to hide in the library, and eventually, being forced to withdraw on medical leave during her sophomore year of college. Doc. No. 1, ¶¶ 39, 41, 49, 56. All of these symptoms as well as the relief requested by Plaintiffs center on K.K., not her parents. Although K.K.'s parents were involved in the Section 504 plan, and the Court recognizes that parents are mainly responsible

for their children's education decisions, the parents do not have any independent claims against Defendant. The Court believes that Section 504 broadly defines potential plaintiffs as "any person aggrieved," because the Section itself covers such a large variety of potential defendants (*ie.* any program or activity receiving federal assistance or a federal provider of assistance). The same broad language is not an indication to this Court that a student's parents should be included in a cause of action pursuant to Section 504.

      The Court acknowledges that the United States Supreme Court has recognized that parents have "independent, enforceable rights" under the Individuals with Disabilities Education Act ("IDEA"). *Winkleman v. Parma City Sch. Dist.*, 550 U.S. 516 (2007). However, the Court agrees with the reasoning set forth in *A.G. v. Lower Merion Sch. Dist.*, 2011 WL 6412144 (E.D. Pa. Dec. 20, 2011) and declines to recognize independent parental claims under Section 504. As in the present case, in *A.G.* the parents of a student brought a Section 504 claim, but did not advance a claim under the IDEA. The Court dismissed the parents' independent claims and held that Section 504 "do[es] not contain any reference to the rights of parents, much less any 'independent, enforceable rights' of parents." *Id.* at * 4 *citing Winkleman*, 550 U.S. at 529. This Court declines to extend the United States Supreme Court's reasoning in *Winkleman* to Section 504 claims, especially in light of Plaintiff's age of majority at the time the Complaint was filed. The Court also declines to find that L.K. and T.G. have claims under particularized liberty interests. Dismissing L.K. and T.G.'s independent claims will not prejudice K.K. or her claims against Defendant. Therefore, Defendant's Motion to Dismiss will be granted in this regard and K.K.'s parents' independent claims under Section 504 will be dismissed.

*V.*     *Conclusion*

Because the claims brought before this Court are most appropriately brought by K.K. on her own behalf, the Court will dismiss her parents, L.K. and T.G. as parties to the suit.

AND NOW, this 22nd day of May, 2013, IT IS HEREBY ORDERED THAT:

(1) Defendant's Motion to Dismiss (Doc. No. 20) is **GRANTED**; and

(2) L.K. and T.G. are **TERMINATED** as parties to this case.

                                      s/ Arthur J. Schwab
                                      Arthur J. Schwab
                                      United States District Judge

cc:     All Registered ECF Counsel and Parties